# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

COURTNEY DAVIS, *et al.,*
individually and on behalf of
all others similarly situated,

        Plaintiff(s),           DECISION AND ORDER
      v.                      04-CV-6098

EASTMAN KODAK COMPANY,

        Defendant(s).

_____

GLADYS ALSTON, *et al.,* on behalf
of themselves and others similarly
situated,

        Plaintiff(s),           DECISION AND ORDER
      v.                      07-CV-6512

EASTMAN KODAK COMPANY,

        Defendant(s).

_____

## Preliminary Statement

On September 3, 2010 this Court issued a Decision and Order (Docket # 351) approving the proposed settlement of a nationwide class action in which a putative class of over three thousand current and former African American Kodak employees, with Courtney Davis as lead plaintiff, had alleged systemic race discrimination in pay and promotions at Eastman Kodak Company. While the Court approved the settlement, it also specifically reserved decision on plaintiffs' counsel's motion for approval of attorney fees and costs which was initially filed on August 19, 2009. So as not to delay implementation of the relief approved in the class

settlement, by stipulated Order signed and entered on October 1, 2010 (Docket # 352), the Court directed that final judgment be entered on the class settlement in order to start the time to appeal the Court's September 3, 2010 Decision and Order. The stipulated Order also confirmed that "because any decision concerning the amount of attorneys' fees and costs will not affect the total amount of funds available for distribution to the Class members," the pending motion for attorneys' fees and costs was deemed a "collateral matter" for which this Court would continue to retain jurisdiction. Judgment was thereafter entered on the class settlement (Docket # 353) on October 4, 2010. No appeal was filed as to the Court's approval of the class settlement and hence plaintiffs' counsel's motion for approval of attorneys' fees and costs is now ripe for decision.

### Factual and Procedural History

Plaintiffs' counsel seek $8,068,091.83 in attorneys' fees and reimbursement of $1,631,908.17 for expenses and costs incurred in prosecuting this case, amounting to a total request of $9.7 million for legal fees and unreimbursed expenses. Both figures are based on calculations made as of August 19, 2009. It is undisputed that counsel has incurred additional and not insignificant costs and legal fees since the date their initial motion was filed.

In my earlier Decision and Order approving the class

2

settlement I discussed in detail the history of this litigation and the process that eventually led to the settlement of all substantive claims. I specifically incorporate those findings and conclusions into this Decision and Order. In approving the settlement, I described the litigation as unusually complex and litigated aggressively but professionally by both sides. Those words seem inadequate as I believe the litigation had a profound effect on not only the named plaintiffs, the class members, and Kodak officials, but also on all counsel and, candidly, the Court as well. The nature of the instant application obliges the Court to make this point clear: In my fifteen years on the bench, no case has been litigated with more skill, tenacity and legal professionalism than this case. The clients, corporate and individual, should be proud of the manner in which their legal interests were brought before and presented to the Court by their lawyers and law firms.

The focus of this opinion is necessarily on plaintiffs' lawyers and accordingly, I turn now to their application for fees and costs. Because four separate law firms located in four metropolitan areas in three different states seek legal fees and costs, a brief summary of the genesis of plaintiffs' legal team is necessary. In August 2002, Clayborne E. Chavers, the founder and owner of "The Chavers Law Firm," was contacted by Andrea Green, then President of the Employees Concerned for Justice ("ECJ") and

was asked if his firm could represent the ECJ plaintiffs on a contingency basis. According to Chavers, Ms. Green told him that the ECJ had conducted a search both within the Western District of New York and across the United States and had been unable to find a law firm willing to take the case on a contingency fee basis and advance the costs necessary to prosecute their claims of discrimination. Chavers agreed to take the case and a retainer agreement was signed. After taking the case, Chavers "immediately realized the immensity of filing an employment discrimination class action against Kodak and that it was necessary for me to co-counsel with a larger law firm or firms with the resources, experience, staff and reputation required to prosecute this type of highly complex case." See January 8, 2010 Affidavit of Clayborne E. Chavers (Docket # 343) at ¶ 26. For two years Chavers tried without success to find a law firm willing to be co-counsel in the case. In 2004, however, Chavers was referred to the law firm of Berger & Montague, P.C. in Philadelphia which agreed to take the case. Berger & Montague "is a plaintiff's class action law firm of more than 60 lawyers who practice in state and federal courts across the United States. Founded in 1970 and drawing on the talents of our nationally recognized and award winning attorneys, the firm has prosecuted and achieved a track record of success in class actions for almost 40 years." See January 8, 2010 Affidavit of Shanon J. Carson (Docket # 344) at ¶ 6. Although Berger &

Montague was capable of and had previously litigated class actions of this type, it decided to seek the assistance of another "major class action firm[] willing to share the risk and the out-of-pocket expenditures." Id. at ¶ 28. Berger & Montague contacted the law firm of Garwin Gerstein & Fisher, LLP in New York City. Garwin Gerstein & Fisher "has decades of experience litigating a wide variety of complex cases, from antitrust to securities to consumer protection cases." See January 7, 2010 Affidavit of Bruce E. Gerstein (Docket # 342) at ¶ 3. With respect to this case, "Berger & Montague co-counseled with Garwin Gerstein & Fisher, LLP specifically to share the risk and the expenses." See January 8, 2010 Affidavit of Shanon J. Carson (Docket # 344) at ¶ 28.

Because the case was pending in the Western District of New York, Berger & Montague and Garwin Gerstein & Fisher contacted Jules L. Smith, Esq., a partner with the local law firm of Blitman & King LLP to ask if his firm would join the plaintiffs' legal team. Mr. Smith has been practicing law since 1971 exclusively in the area of employment law. He has "substantial experience" litigating discrimination cases and is a former Chair of the New York State Bar Association's Labor and Employment Law Section. See January 8, 2010 Affidavit of Jules L. Smith (Docket # 341) at ¶¶ 17-18. Mr. Smith has served as local counsel throughout the litigation. For much of the active litigation before this Court, Shanon Carson, Esq. and Bruce Gerstein, Esq. acted as co-lead

counsel for the named plaintiffs and the class. Mr. Chavers stopped billing for his time in the case in September 2006 due to health, financial and other reasons. <u>See</u> August 19, 2009 Declaration of Clayborne E. Chavers annexed to Docket # 320 at ¶ 6.

As set forth in my Decision and Order approving the class settlement, after several years of contentious litigation before this Court, and while an appeal on a unique and complex issue involving releases was pending before the Second Circuit, the parties engaged mediator Eric D. Green to explore whether the litigation could be resolved. After an extended mediation and post-mediation negotiations between the parties, a settlement was reached which resolved both the class claims and claims by counsel for attorneys' fees and costs. As part of the negotiated settlement, Kodak specifically agreed not to object to the pending attorneys' fees application, but is not representing to this Court that the amount sought is (or is not) fair and reasonable. <u>See</u> December 1, 2009 Hearing Transcript (Docket # 338) at p. 49.


### Attorneys' Fees in Class Actions

In determining appropriate attorneys' fees in class actions, federal courts have historically utilized either the "presumptively reasonable fee" method (formerly the "lodestar method") or awarded fees based upon a percentage of the common fund (the "common fund method"). In the common fund method, the court

6

sets as the fee some percentage of the common benefit fund. With the "presumptively reasonable fee" method, the court multiplies what it determines to be a reasonable hourly rate by the number of hours reasonably expended on the case. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008). Regardless of the approach used, district courts are "guided by the traditional criteria" that reflects a reasonable fee, including: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000).

In a Title VII employment discrimination suit, a court may award "a reasonable attorney's fee" to a "prevailing party." 42 U.S.C. § 2000e-5(k). A "prevailing party" is one who "succeeds on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit." Bridges v. Eastman Kodak Co., 102 F.3d 56, 58 (2d Cir. 1996)(citations and quotations omitted). There is no question here that class counsel represented a "prevailing party" and is entitled to attorneys' fees under Title VII. Nor is there dispute, at least in the Court's mind, that Goldberger factors two through six as set forth above weigh in favor of compensating class counsel fully for their tireless work

on behalf of the plaintiffs.  The remaining issue then is whether the fee negotiated in the settlement is fair and reasonable based on these factors and the time and labor expended by counsel.  The fact that the fee award was negotiated separately and apart from the negotiated class settlement does not require a finding that the negotiated fee is reasonable.  "[I]f the court finds good reason to do so, it may reject an agreement as to attorneys' fees just as it may reject an agreement as to the substantive claims.  The court's perspective and obligations are different from those of the parties."  Jones v. Amalgamated Warbasse Houses, Inc., 721 F.2d 881, 884 (2d Cir. 1983).

Depending on the author of the judicial opinion, the Second Circuit has either modified, clarified, altered or replaced the lodestar method with the "presumptively reasonable fee" method of evaluating attorneys' fee applications.  Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 190 ("The meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness.  This opinion abandons its use.").  Regardless of nomenclature, it is this method that class counsel asks that the fairness of their requested fee be measured by.  Under the "presumptively reasonable fee" approach, the court considers a number of case-specific factors[1] in order to

---

[1] These factors include, but are not limited to, "the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to

establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplies that rate by the number of hours reasonably spent on the case. <u>Arbor Hill Concerned Citizens Neighborhood Ass'n</u>, 522 F.3d at 184, 190. The result is known as the "presumptively reasonable fee" and our Circuit has instructed that in determining this fee we must "bear in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." <u>Id.</u> at 190. "By asking what a reasonable, paying client would do, a district court best approximates the workings of today's market for legal services." <u>Id.</u> at 192.

A corollary to the "presumptively reasonable fee" rule is the "forum rule." Under the forum rule, district courts reviewing fee petitions should generally use the prevailing hourly rate in the community where the case was litigated in calculating the presumptively reasonable fee. Indeed, the Second Circuit has instructed that a court must presume "that a reasonable, paying client would in most cases hire counsel from within his district,

---

prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation." <u>Arbor Hill Concerned Citizens Neighborhood Ass'n</u>, 522 F.3d at 184.

or at least counsel whose rates are consistent with those charged locally." See Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009)(citation omitted). To overcome the presumption is not easy. "[A] litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a *substantially better* net result." Id. at 175. In the "unusual" case where the presumption has been overcome, the "district court may use an out-of-district hourly rate-or some rate in between the out-of-district rate sought and the rates charged by local attorneys-in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates." Arbor Hill, 522 F.3d at 191 (emphasis added). In these circumstances, the focus of the presumptively reasonable fee is not necessarily the customary billing rates of the out-of-district law firm, but the rate a reasonable paying client would pay to obtain the legal services in a competitive legal marketplace.

## Discussion

With these legal guideposts in mind, the Court turns to plaintiffs' counsels' fee application. While counsel established many of the elements needed for a positive review of their fee application, their initial moving papers were deficient in several areas, two of which were crucial to the Court. First, counsel

failed to provide to the Court any contemporaneous time records. Their failure to do so was contrary to the "mandatory requirement" established by the Second Circuit in <u>New York State Ass'n of Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136 (2d Cir. 1983).

> To summarize our rulings for the guidance of the bar in future cases, we have ruled as follows: [] All applications for attorney's fees, whether submitted by profit-making or non-profit lawyers, for any work done after the date of this opinion <u>should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done</u>.

<u>Id.</u> at 1154 (emphasis added). Strict compliance with the <u>Carey</u> rule was recently reemphasized in <u>Scott v. City of New York</u>, Nos. 09-3943-cv (L), 09-5232-cv (XAP), 2010 WL 4869766 (2d Cir. Dec. 1, 2010). There, the Court of Appeals stated that except in the "rarest of cases" lawyers making fee applications in our Circuit "are required to submit contemporaneous records <u>with their fee applications</u>." <u>Id.</u> at *3 (emphasis added).

Class counsel's rationale for not providing the time records was frankly not particularly persuasive. Mr. Gerstein represented that "[o]ther courts that I've appeared in many, many times in class actions many of them much larger than this have not required anything as what the court is saying is mandated." <u>See</u> Hearing Transcript of December 1, 2009 (Docket # 338) at p. 7. Mr. Gerstein attempted to distinguish <u>Carey</u> stating he did not believe

11

it was a class action.  Id. at 9.  Counsel seemed to argue that courts reviewing fee petitions in class actions view them differently because they contain "substantial work product and attorney client records."  As to class action litigation, Mr. Gerstein stated: "My practice on very, very rare occasions has the Court asked for the time records, they rely on the attorneys."  Id. at p. 9.

In fact, Carey did involve class litigation as the plaintiff association sued the State of New York for various constitutional violations on behalf "of a class of mentally retarded persons confined at the Willowbrook Developmental Center."  Carey, 741 F.2d at 1139.[2]  Moreover, the Court knows of no Second Circuit precedent that designates class actions as the "rarest of cases" where the fee petition does not have to be accompanied by contemporaneous time records.  See Jones v. Amalgamated Warbasse Houses, Inc., 721 F.2d at 885 (In reviewing district court's modification of an attorney fee request negotiated as part of a proposed settlement of a class action civil rights suit, the Second Circuit noted that "the burden is on counsel in the first instance to submit detailed contemporaneous time records").  Be that as it may, the Court has allowed class counsel to supplement their fee application by providing for court review contemporaneous time records for all law

---

[2]  Although the suit in Carey was commenced as a class action, the case was resolved by a negotiated consent decree before the court made a final ruling on the merits.  711 F.2d at 1139.

12

firms for whom compensation is sought.[3]  Class counsel has now

provided the time records which the Court has reviewed.

A second and more problematic defect existed with respect to

the original fee application.  In seeking to be compensated at

their customary hourly billing rates, class counsel paid scant

attention to the particularized evidentiary burden required by the

Second Circuit to overcome the forum rule's presumption.

> In order to overcome that presumption, a
> litigant must persuasively establish that a
> reasonable client would have selected
> out-of-district counsel because doing so would
> likely (not just possibly) produce a
> substantially better net result.  In
> determining whether a litigant has established
> such a likelihood, the district court must
> consider experience-based, objective factors.
> Among the objective factors that may be
> pertinent is counsel's special expertise in
> litigating the particular type of case, if the
> case is of such nature as to benefit from
> special expertise.  A litigant cannot overcome
> the presumption through mere proximity of the
> districts, nor can a litigant overcome the

---

[3]  Another issue in the original fee application was that class counsel sought to bill their travel time at their full customary billing rate.  When questioned about this practice, Mr. Gerstein stated that in class action cases where the opposing party is not "contesting paying" courts allow attorney travel time to be billed without reduction.  See Hearing Transcript of December 1, 2009 (Docket # 338) at pp. 36-38.  I disagree.  Travel time is almost uniformly recognized as less productive than regular time. Accordingly, "[c]ourts in this Circuit regularly reduce attorney fees by 50% for travel time."  L.V. v. New York City Dep't of Educ., 700 F. Supp. 2d 510, 526 (S.D.N.Y. 2010)(In approving class action settlement, court reduced attorney travel time to 50 percent of normal billing rate); see also Germain v. Cnty. of Suffolk, 672 F. Supp. 2d 319, 326-27 (E.D.N.Y. 2009)(Successful counsel in Title VII case "should be compensated for travel time at 50% of their reasonable hourly rate")(collecting cases).

presumption by relying on the prestige or "brand name" of her selected counsel. Lawyers can achieve prestige and fame in numerous ways that do not necessarily translate into better results. The party seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result. Unless these limitations are observed, the award of attorney's fees would not respect what we described in Arbor Hill as the "touchstone" of the doctrine, "that district courts should award fees *just high enough* 'to attract competent counsel.'" 493 F.3d at 121 (emphasis added). Among the ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case, [citation omitted] or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise.

Simmons, 575 F.3d at 175-76.

As the Court stated at the hearing, no such particularized showing was made or really attempted by class counsel in their initial fee application. See Hearing Transcript of December 1, 2009 (Docket # 338) at pp. 3-13. Accordingly, the Court permitted class counsel to supplement the record to provide the Court a factual basis to make a finding that a reasonable client in this case would have selected out-of-district counsel. Class counsel have now filed detailed affidavits setting forth their experience and qualifications as well as their knowledge of the unsuccessful efforts by the plaintiffs to obtain counsel in the Western

14

District.  In addition, class counsel have submitted affidavits from employment discrimination lawyers within the Western District explaining why the magnitude, complexity, and risks of this litigation made it likely that use of in-district counsel would produce a substantially inferior result.  See Declaration of Patrick J. Solomon, Esq. (Docket # 340) at ¶¶ 6-8; Declaration of Jules L. Smith, Esq. (Docket # 341) at ¶¶ 24-25; Supplemental Declaration of Clayborne E. Chavers, Sr., Esq. (hereinafter "Chavers Supp. Decl.") (Docket # 343) at ¶¶ 18, 23.  The record, as now supplemented, confirms that class counsel have rebutted the forum rule presumption.  I find that at the time plaintiffs were seeking counsel there were no lawyers or law firms within the Western District possessing requisite expertise and resources who could have prosecuted a nationwide employment discrimination case as complex and demanding as this.  Therefore, I find that a reasonable client would have selected out-of-district counsel experienced in complex class action employment discrimination cases to prosecute their claims because doing so would likely produce a substantially better net result.  Simmons, 575 F.3d at 175.

Rebutting the forum rule presumption, however, does not end the Court's analysis.  Here, plaintiffs hired Mr. Chavers, a small firm[4] civil rights lawyer in Washington, D.C.  According to

_____

[4] Mr. Chavers describes himself as a "solo practitioner."  See Chavers Supp. Decl. at ¶ 39.

Chavers, he "immediately realized the immensity of filing an employment discrimination class action against Kodak" and determined that his small firm had neither the "resources, experience, staff and reputation required to prosecute this type of highly complex case." See Chavers Supp. Decl. at ¶ 26. Chavers chose Berger & Montague, a law firm with more than 60 lawyers located in Philadelphia to prosecute the case. According to Shanon J. Carson, Esq., the partner who leads his firm's Employment Department, Berger & Montague specializes in plaintiffs' class actions and had the staff and expertise to litigate plaintiffs' class claims against Kodak. See January 8, 2010 Declaration of Shanon J. Carson (Docket # 344) at ¶ 28; see also Berger & Montague, P.C., http://www.bergermontague.com/employment-law.cfm (last visited Dec. 15, 2010) ("The Employment Law Group at Berger & Montague, P.C. has recovered millions of dollars on behalf of its clients, and is currently representing employees as lead counsel in some of the largest employment discrimination and wage and hour lawsuits pending across the United States."). In order to "share the risk and out of pocket expenses" Berger & Montague chose to work with the New York City law firm of Garwin Gerstein & Fisher, a firm that specializes in litigating complex cases, primarily in the area of antitrust, securities and consumer protection. See January 7, 2010 Declaration of Bruce E. Gerstein (Docket # 342) at ¶ 3; see also Garwin Gerstein & Fisher, LLP,

http://www.garwingerstein.com (last visited Dec. 15, 2010) ("Garwin Gerstein & Fisher LLP and its predecessor firms have successfully championed the rights of investors and consumers for over fifty years."). Thus, (1) plaintiffs chose to retain Mr. Chavers in Washington, D.C.; (2) Mr. Chavers chose to seek the assistance of Berger & Montague in Philadelphia, and (3) Berger & Montague chose to collaborate with Garwin Gerstein & Fisher in New York City.

Class counsel argues that this sequential selection of out of district lawyers in three distinct legal communities requires this Court to automatically adopt the customary hourly rates of each of the lawyers in their home judicial districts as the "presumptively reasonable fee." According to Mr. Carson, "once I get outside of Rochester, then the [rates] of the counsel that the Plaintiffs are able to hire are presumed to be reasonable by the Second Circuit." See Hearing Transcript of December 1, 2009 (Docket # 338) at p. 35. Because I do not believe that to be a correct statement of the law, I decline to adopt class counsel's position on this issue.

To be clear, the Court does not quarrel with the decision of Mr. Chavers to enlist the help of Berger & Montague upon the immediate realization that he did not have the "resources, experience, staff and reputation required to prosecute this type of highly complex case." Nor does the Court disagree with the decision of Berger & Montague to collaborate with Garwin Gerstein & Fisher "specifically to share the risk and the expenses of

prosecuting the case." <u>See</u> January 8, 2010 Declaration of Shanon J. Carson (Docket # 344) at ¶ 28 (emphasis added). Indeed, the Court recognizes that such collaboration may reflect "the reality of large employment discrimination class actions where because of the great risk involved, multiple firms work together to spread that risk." <u>Id.</u> at ¶ 24. But that "reality" does not immunize counsel from having their out-of-district rates evaluated nor relieve the Court from keeping in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." <u>Arbor Hill</u>, 522 F.3d at 190.

The problems with adopting class counsel's arguments are readily apparent in this case. For example, Mr. Chavers seeks to be reimbursed at his customary hourly rate of $595 per hour. Yet, he candidly and commendably realized upon taking the case that he lacked the resources, experience and staff to successfully prosecute plaintiffs' claims. Given these deficits in expertise and resources, is Mr. Chavers's hourly rate, which is substantially higher than in-district rates, a presumptively reasonable rate as measured by "experienced-based objective factors"?[5] <u>Simmons</u>, 575 F.3d at 175-76. Similarly, Berger & Montague's decision to

---

[5] The foregoing is not intended to minimize in any way the contributions of Mr. Chavers in achieving the settlement of this case. Indeed, without Mr. Chavers's willingness to represent plaintiffs despite his solo practice, the discrimination claims alleged in this action may have never been able to be prosecuted.

collaborate with a New York City law firm raises concerns over accepting Garwin Gerstein & Fisher's customary hourly rates as presumptively reasonable under the forum rule. Berger & Montague <u>did</u> have the experience, expertise and staff to litigate plaintiffs' class claims. <u>See</u> August 19, 2009 Declaration of Shanon J. Carson annexed to Docket # 320 at ¶ 5 ("Berger & Montague is one of the preeminent class action law firms in the United States. Our firm's Labor and Employment Department has extensive experience representing employees in class action litigation."). But they wished to share the risk and substantial expenses of the litigation with another firm. In choosing Garwin Gerstein & Fisher, they selected a firm in New York City whose lawyers customarily billed hourly rates substantially higher than their own. Bruce Gerstein, lead counsel from Garwin Gerstein & Fisher, seeks to be compensated at his customary hourly rate of $850 per hour. Would reasonable paying clients wishing to spend the minimum necessary to litigate the case seek out a New York City law firm to share the risk and expenses necessary to litigate their case when the customary billing rates for that New York City law firm are roughly twice what lead counsel at their Philadelphia firm are charging them, particularly when the New York City law firm and the lead counsel have no special expertise in employment discrimination cases? Customary billing rates for associates at Garwin Gerstein & Fisher are similarly higher. For example, class counsel seek an

19

hourly billing rate of $300 per hour for Jonathan Gerstein, Esq. who was admitted to the New York Bar in 2008. If approved, his billing rate would be roughly comparable to Jules Smith, Esq., a partner at the in-district labor law firm of Blitman & King. Mr. Smith has practiced labor and employment law for almost forty years and is a former Chair of the New York State Bar Association's Labor and Employment Section. There are other disparities that draw the attention of the Court. In the fee petition, class counsel seeks hourly rates of $175 per hour for the work of SUNY Buffalo law students who were hired as independent contractors and paid $25 per hour for their work. Another example is Berger & Montague seeking an hourly rate of $375 for the work of an "Investigator." Put simply, I do not agree with class counsel that once the forum rule presumption has been rebutted, the Court must blindly endorse any and all "customary billing rates" utilized by the out-of-district law firms prosecuting this class action as those a reasonable client would be willing to pay.

## The Presumptively Reasonable Fee

By rough count, the pending fee petition asks the Court to endorse as presumptively reasonable nineteen different hourly billing rates for Berger & Montague, and twenty-three different hourly billing rates for Garwin Gerstein & Fisher. Believing there has to be a better way to test whether the overall fee requested by

class counsel is fair and reasonable, the Court directed class counsel to provide additional information to the Court. Specifically, the Court asked class counsel to group the lawyers who worked on this case based on their years of practice. Counsel was instructed to file an affidavit grouping the lawyers into the following categories: 0-5 years, 6-10 years, 11-20 years, and greater than 20 years. The Court then examined recent cases fixing presumptively reasonable hourly rates for employment discrimination cases, civil rights cases and class action cases in Philadelphia, Washington, D.C. and New York City with particular emphasis on Philadelphia because Berger & Montague was the first and perhaps only firm retained by plaintiffs which had extensive experience representing employees in complex class action litigation.[6]  In setting presumptively reasonable hourly rates the Court also

---

[6] See, e.g., Port Auth. Police Asian Jade Soc. of N.Y & N.J. Inc. v. Port Auth. of N.Y. & N.J., 706 F. Supp. 2d 537 (S.D.N.Y. 2010)(Title VII discrimination action; $400/hour for partners, $200/hour for junior associates, and $100/hour for paralegals was "reasonable"); Olsen v. Cnty. of Nassau, No. CV 05-3623, 2010 WL 376642 (E.D.N.Y. Jan. 26, 2010)(employment discrimination action; $250/hour for six year associate, $175/hour for five year associate, $75/hour for paralegals was awarded); Imbeault v. Rick's Cabaret Int'l Inc., No. 08 Civ. 5458(GEL), 2009 WL 2482134 (S.D.N.Y. Aug. 13, 2009)(employment discrimination "proposed" class action; court reduced rates to $400/hour for partner with thirteen years experience, $325 for associate with eight years experience, and $80/hour for paralegals and law clerks); McGuffey v. Brink's Inc., 598 F. Supp. 2d 659, 669-70 (E.D. Pa. 2009)(employment rights litigation; $400/hour "is a reasonable hourly rate" for attorneys "in and around Philadelphia" with over twenty years experience); Brown v. Nutrition Mgmt. Servs. Co., No. 06-2034, 2009 WL 222352 (E.D. Pa. Jan. 26, 2009)(employment discrimination case; $400/hour was reasonable for attorney with more than 40 years experience).

considered all of the case-specific variables I believe are relevant in setting a reasonable out-of-district hourly rate in this case. In following this process, I relied on the holding of the Second Circuit in Arbor Hill: "We now clarify that a district court may use an out-of-district hourly rate - **or some rate in between the out-of-district rate sought and the rates charged by local attorneys** - in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates." Arbor Hill, 522 F.3d at 191 (emphasis added). Based on the circumstances present here, I find that the presumptively reasonable fee is, in fact, "in between the out-of-district rate sought and the rates charged by local attorneys." Specifically, I determine that the reasonable out-of-district hourly rates for non-travel time are as follows:

| | |
|---|---|
| Attorneys with greater than 20 years experience | $450/hour |
| Attorneys with 11-20 years experience | $350/hour |
| Attorneys with 6-10 years experience | $300/hour |
| Attorneys with 0-5 years experience | $250/hour |
| Paralegals | $130/hour |
| Investigators | $100/hour |
| Contract Law Students | $ 75/hour |

I further determine that consistent with Second Circuit practice, travel time for all of the above categories should be compensated at half of the regular hourly rate. Finally, I determine that most

of the hourly rates sought by Jules L. Smith of Blitman & King (who served as local counsel) are reasonable.  The Court finds that the rates Blitman & King seeks for attorneys with 6-10 years of experience, however, must be reduced from $330 an hour to $300 an hour.  The Court further determines that the hourly rate sought by Judith Biltekoff, Esq. (who also served as local counsel) is reasonable.

The calculations resulting from the procedure set forth above and using the data supplied by class counsel yields an unreduced total fee of approximately nine million dollars – almost one million dollars more than sought in the fee petition.  See Exhibit "A" annexed to this Decision and Order.  However, courts recognize that in any fee application, particularly where large numbers of attorneys from different law firms are working on the case, there exists duplication of effort and other inefficiencies.  The Court's review of the time records submitted by the various law firms seeking reimbursement here confirms that a relatively small portion of time billed here could be deemed excessive, redundant, or otherwise unnecessary.  In making an appropriate reduction however, the Court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).  Where, as here, the billing records are voluminous, "it is less important that judges attain exactitude, than that they use their

experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent." Amato v. City of Saratoga Springs, 991 F. Supp. 62, 65 (N.D.N.Y. 1998). "[A] district court can exclude excessive and unreasonable hours from its fee computation by making an across-the-board reduction in the amount of hours." Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997).

Here, based on my experience with the case and after review of the records submitted, I find that an across-the-board reduction of ten percent would be appropriate to eliminate duplicative or unnecessary time. See Finkel v. Metro. Sign & Maint. Corp., No. 09 CV 4416(SJ), 2010 WL 3940448, at *16-17 (E.D.N.Y. Aug. 12, 2010)(finding that a ten percent across-the-board reduction was appropriate); M. Lady, LLC v. AJI, Inc., No. 06 Civ. 0194(HPB), 2009 WL 1150279, at *9 (S.D.N.Y. Apr. 29, 2009)(concluding that a ten percent reduction in the amount of hours was warranted where several of the billing records' entries were duplicative); Cover v. Potter, No. 05 CIV. 7039(GAY), 2008 WL 4093043, at *7 (S.D.N.Y. Aug. 29, 2008)(reducing the overall fee award by ten percent because the hours billed were "excessive"); Klimbach v. Spherion Corp., 467 F. Supp. 2d 323, 332 (W.D.N.Y. 2006)(finding that a ten percent across-the-board reduction was necessary due to the number of entries that were "vague").

Applying the ten percent reduction results in a presumptively

reasonable fee that remains consistent with the attorneys' fee award requested by class counsel. Accordingly, I find that when measured against a presumptively reasonable fee as required by the Second Circuit, the $8,068,091.83 million dollars in attorneys' fees sought by class counsel is fair and reasonable and should be approved. Similarly, I find class counsels' request to be reimbursed in the amount of $1,631,908.17 for expenses and costs incurred in prosecuting this action to be justified, reasonable and fair and it also is approved.

## Conclusion

As now apparent, while traveling a different road than urged by class counsel, the Court has nonetheless reached the same destination -- approval of the attorneys' fee application. To the extent class counsel questions why it was necessary for the Court to challenge aspects of their fee petition if the bottom line[7] was ultimately going to be approved, the answer is simple: to this Court and in this case the path traveled was as important as arriving at the final destination. A perfunctory decision approving the fee application would have been easier, but it also

---

[7] Although the fee petition urged the Court to endorse substantially higher hourly rates for class counsel, the negotiated settlement required them to reduce their "lodestar" request substantially. Hence, the reduction necessitated by the settlement brought the award sought down to the level this Court has found presumptively reasonable pursuant to the analysis set forth in this Decision and Order.

would stand as an endorsement of the arguments class counsel urged – arguments which I found contrary to my judicial responsibilities and Second Circuit precedents. Despite my disagreement with portions of their fee application, the Court would be remiss if it did not commend class counsel and all those who worked for firms representing the thousands of current and former employees of Kodak for the outstanding job they did in representing the interests of their clients. For the last several years, lead counsel responsibilities were shared by Shanon Carson and Bruce Gerstein. Their legal work in an extraordinarily complex case was exemplary, their tireless commitment to seeking justice for their clients was unparalleled and their conduct as officers of the court was beyond reproach. Nothing in this Decision and Order should be taken to question or diminish in any way the highest professional respect and regard the Court has for both of them and their law firms.

For the reasons set forth herein, class counsel's motion for approval of an award of attorneys' fees and costs (Docket # 319) is **granted**.

**SO ORDERED.**

JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:    December 17 , 2010
              Rochester, New York

| | Court Rates For Non-Travel Hours | Total Number of Non-Travel Hours | Total Reimbursement | Total Number of Travel Hours | Court Rates for Travel Hours | Total Reimbursement |
|---|---|---|---|---|---|---|
| Attorneys with 0-5 years experience | $250/hr. | 6,976 | $1,744,000.00 | 111 | $125/hr. | $ 13,875.00 |
| Attorneys with 6-10 years experience | $300/hr. | 7,704.3 | $2,311,290.00 | 279 | $150/hr. | $ 41,850.00 |
| Attorneys with 11-20 years experience | $350/hr. | 1,449.9 | $ 507,465.00 | 28.5 | $175/hr. | $ 4,987.50 |
| Attorneys with greater than 20 years experience | $450/hr. | 6,731.4 | $3,029,130.00 | 526.3 | $225/hr. | $ 118,417.50 |
| Paralegals | $130/hr. | 5,802.6 | $ 754,338.00 | 51.2 | $ 65/hr. | $ 3,328.00 |
| Investigators | $100/hr. | 104.2 | $ 10,420.00 | 0 | | |
| Law Interns (includes after they graduated) | $ 75/hr. | 6,456.7 | $ 484,252.50 | 24.3 | $ 37.50/hr. | $ 911.25 |
| TOTALS | | | $8,840,895.50 | | | $ 183,369.25 |
| GRAND TOTAL | | | | | | $9,024,264.75 |